IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re: Aqua Marine Enterprises, Inc. ) | | Case No.: 18-80464-CRJ-11 |
| EIN: xx-xxx3036 ) | | |
| ) | | |
| ) | | |
| Debtor. ) | | Chapter 11 |
| _____) | | |

## DEBTOR'S DISCLOSURE
## STATEMENT DATED DECEMBER 13, 2018

### INTRODUCTION

Aqua Marine Enterprises, Inc., as Debtor-in-Possession ("Debtor"), filed a voluntary petition under Chapter 11 of Title 11, United States Code ("Bankruptcy Code" or "Code"), on February 16, 2018, in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court").

Debtor submits this Disclosure Statement dated December 13, 2018 ("Disclosure Statement"), in connection with its Chapter 11 Plan of Reorganization dated December 13, 2018, ("Plan") as required by 11 U.S.C. § 1121. The definitions in the Plan are incorporated by reference. Except where otherwise indicated herein or as defined in the Plan, the terms in this Disclosure Statement have been used as defined in the Bankruptcy Code. The Plan has been filed in the Bankruptcy Court contemporaneously with this Disclosure Statement.

Debtor provides this Disclosure Statement to all of its known creditors and parties in interest to disclose information to be determined by the Bankruptcy Court as adequate for said creditors and parties in interest to reach a reasonably informed decision in connection with the Plan.

The Disclosure Statement describes the circumstances giving rise to filing this petition, summarizes the anticipated future of the Debtor, provides a liquidation analysis and summarizes the Plan. Great effort has been made to describe material matters fully and completely; however, no warranties can be made. Creditors and Interest Holders are urged to read the Plan carefully and are further urged to consult with their counsel in order to fully understand the Plan. The Plan is a legally binding document and is based on complex legal and financial considerations.

Section 1125 of Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et. seq.) requires that the Debtor, as a condition precedent to solicitation of acceptance of its Plan of Reorganization, submit a written Disclosure Statement. The purpose of this document is to set forth sufficient

detail to allow each holder of a claim or interest of a particular Class to make an informed judgment about acceptance of the Plan.

Prior to soliciting votes of acceptance from Creditors, the Court must have approved the Disclosure Statement.

## DISCLAIMER

NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY REGARDING FUTURE BUSINESS OPERATIONS OF DEBTOR OR THE VALUE OF DEBTOR'S ASSETS, HAVE BEEN AUTHORIZED BY PROPONENT EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT. YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN. ANY PERSON MAKING REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR AT HEARD, ARY & DAURO, LLC, 303 WILLIAMS AVENUE, SUITE 921, HUNTSVILLE, ALABAMA 35801.

FOR VARIOUS REASONS, THE RECORDS OF PROPONENT PRIOR TO THE PREPARATION OF THIS PLAN HAVE NOT ALWAYS BEEN COMPLETE. THE ACCURACY OF THE INFORMATION SUBMITTED WITH THIS DISCLOSURE STATEMENT IS DEPENDENT UPON ACCOUNTING PERFORMED BY DEBTOR AND DEBTOR'S ACCOUNTANT. WHILE EVERY EFFORT HAS BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY. NO KNOWN INACCURACIES ARE INCLUDED. WHILE EVERY EFFORT HAS BEEN MADE TO INSURE THAT THE ASSUMPTIONS ARE VALID, UNDER THE CIRCUMSTANCES, NEITHER DEBTOR, ITS ATTORNEY, NOR ITS ACCOUNTANT UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE PROJECTIONS.

A LIQUIDATION ANALYSIS HAS BEEN UNDERTAKEN OF SUBSTANTIALLY ALL OF THE DEBTOR'S PROPERTY. THE VALUES PLACED ON DEBTOR'S PROPERTY AND SUMMARIZED HEREIN ARE THE DEBTOR'S BEST ESTIMATE OF THE VALUES OF THE PROPERTY OF DEBTOR AS OF THE TIME OF THE FILING OF THIS DISCLOSURE STATEMENT.

THE VALUES HEREIN MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF THE FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

# **EXPLANATION OF CHAPTER 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to reorganize this business for the benefit of its creditors and its interest holders pursuant to a plan of reorganization. The Debtor's bankruptcy case was commenced on or about February 16, 2018 ("Petition Date") as a voluntary Chapter 11 bankruptcy case.

Section 362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect claims that arose prior to the Petition Date, or otherwise to interfere with the Debtor's property or business.

Confirmation of a Chapter 11 plan of reorganization requires either that all classes of claims and interests (entitled to vote) accept the plan or that the plan be accepted by the holders of at least one impaired class of claims (not held by "insiders" within the meaning of the Bankruptcy Code) to satisfy the requirements of § 1129(b) of the Bankruptcy Code. A plan of reorganization must also be in the best interests of creditors and interest holders, which essentially means that the cash or other property to be distributed to creditors and interest holders may not be less than they would receive if all of the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code.

Acceptance by a class requires that more than one-half in number and at least two-thirds in amount of the total allowed claims who vote in that class vote in favor of the plan. So long as one class of non-insider impaired claims or interests accepts a plan, it need not be accepted by all classes. The Bankruptcy Court may confirm a plan pursuant to its "cramdown" powers under § 1129(b) of the Bankruptcy Code, if it does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class.

As is more fully described below, most creditors are impaired and a cramdown may be necessary to confirm the Plan over the objection of any dissenting class. The Plan Proponent believes that the Administrative Class of Creditors are unimpaired under the Plan. Additionally Class 1.01 of K&B Fabricators is also unimpaired. Section 1119(f) provides that a class that is not impaired under the Plan, and each holder of a claim or interest of such class, is conclusively presumed to have accepted the Plan. Solicitation of acceptances with respect to members of such Classes is not required. The claims of creditors in classes 2 through 3 are impaired.

As a Small Business Case, only the Debtor may file a plan of reorganization before the expiration of 300 days from the date of the order for relief Under Section 1121(e) of the Bankruptcy Code . If a plan has been filed, then the Debtor has 45 days from the filing of the plan to have it confirmed under the time provisions are extended under § 1121(e)(3). The exclusivity provisions of 11 U.S.C § 1121 have expired in this case.

## PROCEDURE FOR FILING PROOFS OF CLAIMS AND APPLICATIONS FOR ADMINISTRATIVE EXPENSES

The Bankruptcy Court established July 5, 2018, as the bar date for filing all Proof of Claims including governmental units. The Plan provides that Claims will be recognized only if evidenced by a timely filed Proof of Claim. A Proof of Claim is deemed "allowed" if it appears in the Debtor's schedules filed with the Bankruptcy Court and is not listed as disputed, contingent or unliquidated or is not disputed as part of the Plan or objected to by the Debtor pursuant to Rule 3007 of the Federal Bankruptcy Rules or is otherwise allowed by the Bankruptcy Court. The Debtor's schedules may be reviewed during regular business hours in the Office of the Clerk, United States Bankruptcy Court, Decatur, Alabama or in the office of Heard, Ary & Dauro, LLC, 303 Williams Avenue, Suite 921 Huntsville, AL 35801, (256) 535-0817.

## VOTING PROVISIONS

Creditors holding Allowed Claims are entitled to vote to accept or reject Debtor's Plan. THE COURT WILL FIX A DATE BY WHICH ALL BALLOTS CONCERNING THE PROPOSED PLAN MUST BE FILED WITH THE COURT. ALL BALLOTS MUST BE RECEIVED BY SAID DATE BY THE COURT WITH COPIES TO THE OFFICES OF HEARD, ARY, & DAURO, LLC, COUNSEL FOR DEBTOR, at 303 Williams Avenue, Suite 921, Huntsville, Alabama 35801. No ballots received by the Court after that date will be counted in determining whether the Plan should be confirmed. Even though a creditor may not vote or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each Class of creditors and/or is confirmed by the Court.

Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a Claim or interest for voting purposes does not necessarily mean that the Claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any Claim to which an objection has been or will be made will be allowed only for distribution after determination by the Court. Such determination may be made after the Plan is confirmed.

In order for the Plan to be deemed accepted by a Class of creditors holding Unsecured Claims, creditors that hold at least two-thirds (2/3) of the total dollar amount and more than one-half (1/2) of the total number of Allowed Claims of creditors voting on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. § 1129 (b), the Court may confirm the Plan notwithstanding the rejection thereof by more than one-third (1/3) in amount or one-half (1/2) in number of the creditors voting on the Plan in any given Class. Debtor intends to seek confirmation under 11 U.S.C. § 1129(b) in the event any Class of creditors rejects the Plan.

# CONFIRMATION OF THE PLAN

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

1. <u>Confirmation Hearing</u>. Section 1128(a) of the Bankruptcy Code requires the Court, after notice, to hold a hearing on confirmation of the Plan ("Confirmation Hearing"). Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan, regardless of whether it is entitled to vote.

2. <u>Objections to Confirmation</u>. The Court is expected to direct that any objections to the Plan are required to be made in writing in advance of the Confirmation Hearing. The hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the hearing. While the Plan Proponents expect that any hearing to consider objections to the confirmation of the Plan will be held in conjunction with the Confirmation Hearing, there can be no assurance that such will be the case.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY MADE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

3. <u>Requirements for Confirmation of the Plan</u>. At the Confirmation Hearing, the Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Court will enter an order confirming the Plan. These requirements include:

(A) <u>Feasibility of the Plan</u>. In order for the Plan to be confirmed, the Court must determine that a further reorganization or subsequent liquidation of the Debtor is not likely to result following confirmation of the Plan. The Debtor believes that the Plan is feasible in that it pays money to satisfy existing Administrative, Priority and Unsecured Creditors.

(B) <u>Fair and Equitable Requirement</u>. In order for the Plan to be confirmed, the Court must find that no junior Class will receive any distribution unless each senior Class consents or is paid in full or substantial property is contributed. The Plan Proponents believe that the Plan satisfies this requirement in as much as all Creditors will be paid the present value of their Claim.

# HISTORY OF THE DEBTOR

Debtor is an Alabama Corporation that was formed on 1988 in Morgan County, Alabama. Debtor is in the business of manufacturing and selling steel storm shelters. It markets and sells the product throughout the southeastern United States. The Debtor is a family owned and operated business. The Debtor is owned by Melanie Mitchell (25%); Robert Brent Mitchell (25%); Doris Mitchell (26%); and Robert Mitchell (24%). Doris Mitchell is the President of the Debtor. Due

to health concerns, the Debtor is operated by Melanie Mitchell with the assistance of her husband Brent Mitchell. Melanie Mitchell is paid a total salary of $92,000 per year. Doris Mitchell and Robert Brent Mitchell no longer receive any salary. Additionally, Brent Mitchell does not receive a salary for working on behalf of the Debtor.

Currently, the Debtor employs 13 employees. Debtor's main office is located at 1301 Industrial Drive, Hartselle, Alabama, 35640.

## SUMMARY OF EVENTS LEADING TO BANKRUPTCY AND OTHER PRE-PETITION MATTERS

Pre-petition the Debtor was involved in a lawsuit pending in the Circuit Court for Morgan County Alabama styled *K&B Fabric vs. Aqua Marine Enterprises, Inc.,* Case No. CV-2014-900394.00 (hereinafter "Lawsuit"). The result of that Lawsuit was the entry of a judgment against the Debtor for the sum of $137,680 ("Judgment"). In addition to this amount, the Judgment further required the Debtor to pay K&B the sum of $531,000 from its profits and further created an obligation to pay K&B "the profits of Aqua Marine earned through the sale of community and/or storm shelters for all the years after 2016". As explained below, the Debtor appealed this judgment to the Alabama Supreme Court. On appeal, the Alabama Supreme Court reversed the Judgment and ordered a new trial on the issue of damages.

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on February 16, 2018, in an effort to protect its assets and to continue as a going concern. At the point of filing, while the Debtor was facing problems with the K&B and many of its trade creditors resulting from the cash flow problems described above. Ultimately, it was a combination of these factors that caused the Debtor to file for relief under Chapter 11 in an effort to protect its assets and to preserve the "going concern" value of the company.

## DESCRIPTION OF AVAILABLE ASSETS AND "GOING CONCERN" AND "LIQUIDATION VALUES" AND EQUITY

Schedules A and B of the Debtor's bankruptcy schedules identify the Debtor's personal property. Schedule A shows that Debtor does not have an interest in real property. Schedule B identifies Debtor's personal property. These assets are described on Exhibit A, which contains a summary of each asset and its market and liquidation values. The values set forth on Exhibit A are based upon the Debtor's best judgment as well as several objective measures of value where available. Exhibit A indicates the theoretical equity in these properties were the Debtor to liquidate under Chapter 7 of the Bankruptcy Code. Liquidation values are again based upon the Debtor's best judgment.

One major factor bears on the issue of liquidation. The State of Alabama requires a manufacturer such as the Debtor to have specific licenses in order to be able to sell and install the

storm shelters that the Debtor sells. In the case of the Debtor these licenses are held by Brent Mitchell personally. Consequently, possession or lack thereof of the necessary licenses bears greatly on the going concern value of the company and the corresponding liquidation value.

## ESTIMATES OF ADMINISTRATIVE EXPENSES AND CLAIMS ANALYSIS

The Debtor has incurred legal fees from Heard, Ary & Dauro, LLC in the approximate amount of $39,443 as of November 30, 2018. These fees are for legal services provided to the Debtor in connection with this Chapter 11 proceeding. The Debtor will continue to incur professional fees in this matter until such time as a final decree is entered in this case. The Debtor cannot currently calculate the total amount of professional fees it will incur in this matter with any degree of certainty that could reasonably be relied upon. All such fees, however, are subject to being approved by the Bankruptcy Court prior to payment.

Additionally, what the Debtor owes Geremy Seagars for accounting fees as of October 30, 2018, was less than $1,000. The Debtor will continue to incur accounting fees throughout the remainder of this case.

Debtor has also incurred legal fees to Bradley Arant Boult Cummings, LLP in the amount of $75,638 for representing Debtor in the appeal of the Judgment obtained by K&B Fabricators. It is further expected that Bradley Arant will represent the Debtor in the event that there is a re-trial of the Lawsuit to determine the amount of damages, if any, K&B is entitled to recover. Presently, it is estimated that the amount of legal fees the Debtor will incur additiona in such a re-trial is apporoximately $100,000 plus costs. The payment of these fees are subject to further orders of the Court.

Furthermore, Debtor is obligated to Mitchell Investments in the amount of approximately $144,000 for unpaid rent which has accured during the course of the Bankruptcy.

Attached hereto is <u>Exhibit B</u> which is an analysis of: 1) the list of claims or claims register compiled by the Bankruptcy Court; and 2) the schedules showing unfiled claims. This exhibit also indicates whether a claim is allowed or disputed. <u>Exhibit B shall control and take precedence over any variance between Exhibit B and the schedules as to whether a claim is allowed or disputed</u>. The analysis found on <u>Exhibit B</u> is incorporated herein by reference.

## SUMMARY OF FINANCIAL CONDITION AND FEASIBILITY

As indicated by Debtor's Schedules, at the time the Debtor filed its Petition the Debtor had assets of approximately $1,344,020.00 which included $446,565 of "work in progress." Hence, the value of Plaintiff's physical assets subject to liquidation on the Peitition Date were likely $897,455.00. As of the Petition Date the Debtor's liabilities consisted of $932,565.08 in know debts and the obligation imposed under the Judgment to pay K&B all of its profits earned through the sale of community and/or storm shelters for all years after 2016. Therefore, the Debtor was

insolvent at the time it filed this Petition.

As noted herein, the Debtor has filed its Operating Reports with the Court since it filed bankruptcy. These reports are incorporated herein by reference. The chart below summarizes the company's post petition revenues for the last six months.

|  | May 18 | June 18 | July 18 | Aug. 18 | Sept. 18 | Oct. 18 | Totals |
|---|---|---|---|---|---|---|---|
| Gross Inc. | $253,385.99 | $277,158 | $21,779 | $118,055 | $68,790.60 | $197,080.76 | $1,530,537.72 |
| Op. Exp. | $189747 | $186,516 | $122,968 | $146,214 | $113,537.30 | $332.919.12 | $796,752.62 |
| Net Income | $63,638.98 | $90,642 | ($101,189) | ($28,159) | ($45,647.06) | ($135,838.36) | ($156,655) |

As a fabrication company, the Debtor keeps its financial books and records on an accrual basis in accordance with GAAP. Because the Debtor' s books are kept on an accrual basis they include recieveables not yet received by the Debtor. Thus, included in the Operating Reports is the Debtor's current Balance Sheet. This Balance Sheet shows that the Debtor has $304,727.56 in accounts receivable which have not yet been collected. The Debtor believes, however, that these recievables are collectable as they are either current or are due for 90 days or less.

Additonally, as shown by Exhibit "C", the Debtor has approximately $1,455,530 in open contracts.[1] This list does not include contracts under which the Debtor is currently performing. Rather, this Exhibit shows the dollar volume of work that the Debtor has under contract to perfom in 2019. The Debtor estimates an average profit margin of 20% on these contracts which is approximately $291,106.

Attached as Exhibit "D" is a 5 year projected Budget for the Debtor. This budget is based on an average growth factor of 10% per year which the Debtor believes is reasonable for this industry. Presently, the Debtor is forecasting a loss of $110,737.43 for fiscal year 2018. The after tax net income for the 60 months following bankruptcy is projected to be **2019**: $50,749,17; **2020**: $211,529.21; **2021** $277,382; **2022:** $296,799 and **2023:** $317,575. Therefore the Debtor opines that it will be able to pay its allowed claims as provided for herein assuming that it remains in business. Accordingly, and with that assumption Debtor opines that its plan is feasible.

## SUMMARY OF PLAN AND TREATMENT OF CLASSES UNDER THE PLAN

The Plan will be summarized by incorporation of Article III: Treatment of Classes under the Plan, Article IV: Property of the Estate and Means of Execution of the Plan, and Article V: General Provisions of the Plan. Other provisions of the Plan are extremely important, especially Article I: Definitions. The Plan should be read in full.

---

[1] This Exhibit has been partially redacted in order to protect the proprietary nature of the contracts and Debtor's pricing.

**1.0** <u>**Secured Claims**</u>**:**

    **1.01** <u>**K&B Fabricators, Inc.**</u>: This Class consists of the Allowed Claim of K&B Fabricators, Inc. ("K&B") in the approximate amount of $137,680 and is not impaired. This Allowed Claim of K&B Fabricators aises from the Judgment entered against the Debtor in the Lawsuit. Debtor did not appeal this portion of the Judgment. Debtor will pay, settle and satisfy this claim upon the Effective Date of the Plan. K&B would retains the lien it has asserted upon the Debtor's property until such time as the debt is paid in full. Because this claim of K&B is unimpaired, it is deemed to accept the Debtor's plan pursuant to Section 1119(f) of the Bankruptcy Code.

    **1.02** <u>**K&B Fabricators, Inc.**</u>: This Class consists of the disputed Claim of K&B Fabricators, Inc. ("K&B") which is impaired. The amount of the Claim is unknown but consists of the damages asserted by K&B against the Debtor and non debtor Brent Mitchell in the Lawsuit. The Alabama Supreme has remanded the Lawuit back to the Morgan County Circuit Court to determine the amount of profits, if any, that the Debtor improperly earned from its fabrication of storm shelters. As discussed below, this Court has lifted the automatic stay to allow the Lawsuit to proceed determine the amount of damages to which K&B may be entitled against the Debtor and non-debtor defendant Brent Mitchell in the Lawsuit. Depending upon the amount of the Claim, it may either secured or unsecured as the Debtor reserves all rights it has asserted in its preference action against K&B styled *Aqua Marine Enterprises, Inc. vs. K&B Fabricaotrs, Inc.*, A.P. No. 18-80040.

    Subject to the reservation of rights, the Debtor proposes that it will pay, settle and satisfy this claim by paying K&B the sum of $162,320 over a thirty six month (36) month period with an interest rate of 5.25% in monthly installments of $4,883.12 or as otherwise ordered by this Court. The first monthly installment shall be due within 30 days from the Effective Date of the Plan, and subsequent installments shall be due on the 1st day of each month thereafter until said claim has been paid in full. The Debtor reserves the right to prepay the portion of this claim without penalty.

    Furthermore, in the event that K&B rejects the treatment of this claim as provided in this class and proceeds to re-litigate the damages in the Lawsuit and in the event that K&B were to recover an amount in excess of $162,320 in damages against Debtor, then in such event, Debtor reserves the right to either amend its Plan to reamortize the debt or proceed with liquidation as set forth below.

**2.0** <u>**Non-priority Unsecured Claims**</u>: This class consists of all allowed general unsecured claims which are impaired. The total amount of unsecured claims exceeds $100,000. The

claims are of every kind and nature including claims arising from personal guarantees, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims and damages arising from or related to any liquidated or contingent claim. It also includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court. Holders of general unsecured claims without priority which are Allowed Claims as determined on or before the Effective Date of the Plan shall be paid on a pro rata distribution. Payment to the creditors in this class shall be made from the Debtors future net income. Debtor reasonably believes that creditors in this class will receive a distribution equal 100% percent of their Allowed Claim. Allowed Claims in this class shall receive monthly payments commencing on the Effective Date of the Plan and continuing over a period of sixty months.

**3.0** **Equity Interest Holder**: This Class consists of the Allowed claims of the equity shareholders of the Debtor. The Debtor is owned by Melanie Mitchell (25%); Robert Brent Mitchell (25%); Doris Mitchell (26%) and Robert Mitchell (24%). The claims of the interest holders in this class are impaired. The Allowed claims of the interest holders shall retain thier equity interest in the Debtor, but shall not receive a distribution based on their claims under the Plan until allowed administrative, priority and unsecured claimants have been paid or otherwise satisfied as provided for herein.

As discussed herein, depending upon which option of the Debtor's Plan is confirmed by the Court, interest holders in this class may be required to contribute "new value" to the Debtor. This new value is in the form of a loan by the equity interest holders to the Debtor up to the amount of $100,000

## TREATMENT OF UCLASSIFIED ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**Administrative Expense Claims:**

**1.01** **Heard, Ary & Dauro, LLC:** This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan unless otherwise agreed upon by the parties.

**1.02** **Geremy Seagars:** This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan unless otherwise agreed upon by the parties.

**1.03** **Bradley Arant Boult Cummings:** This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan unless otherwise agreed upon by the parties.

**Priority claims:**

**2.2** **Internal Revenue Service:** This Class consists of the Allowed Priority Claim of the Internal Revenue Service ("IRS"). The IRS has filed a claim for FUTA taxes for the tax year ending 2017 and FICA taxes for the 1st quarter of 2018 in the amount of 0.00. Upon information and inquiry, the Debtor is not obligated to the IRS for any tax liability. To the extent that such liability exists then Debtor would propose that in accordance with §1129(a)(9)(D), the total allowed portion of this claim that meets the definition contained in §507(a)(8) of the Bankruptcy Code shall be amortized over a period of sixty (60) months with an interest rate of 4.00%. The Debtor reserves the right to prepay the portion of the IRS unsecured priority claim during the referenced payment period. During the pendency of the repayment period for the pre-petition tax debt owed to the IRS, in the event the Debtor fails to remit any monthly payment on the IRS secured and unsecured priority claim as each payment becomes due; or, timely file any and all post-petition federal income tax returns by the due date for each respective tax period including any extensions and pay the taxes due on the return; the automatic stay will be considered terminated and the IRS may proceed with its legal and/or administrative remedies to collect any and all sums due on its amended claim and any post-petition liability.

For the tax periods listed on the amended claim, the time periods found at 26 U.S.C. 6503(b) and 6503(h) are tolled during the term for repayment stated in this plan. For the tax periods listed on the claim filed by the IRS, the time periods found at 11 U.S.C. § 507(a)(8) are tolled during the term for repayment period stated in this plan.

## THE CHAPTER 11 FILING AND POST-PETITION EVENTS

On February 16, 2018, the Debtor filed a voluntary petition, List of Creditors Holding 20 Largest Unsecured Claims and Corporate Ownership Statement, and Matrix under Chapter 11. The Debtor filed amended schedules, Statement of Financial Affairs, and an updated Matrix on March 19, 2018. The Court scheduled July 5, 2018, as the bar date for all claimants to file proofs of claim, including governmental units and/or agencies.

Post-petition there has been significant litigation both in and outside of the Bankruptcy Court between the Debtor and K&B Fabricators ("K&B"). Most of this litigation involved issues regarding the amount of the claim held by K&B and to what extent, if any, did the the claim claim of K&B attach to property of the Estate.

The Debtor filed an adversary proceeding against K&B in this case styled *Aqua Marine Enterprises versus K&B Fabricators Inc* AP No. 18-80040. Pursuant to this complaint, the Debtor

sought to have the Judgment claim of K&B declared to be preferential or alternatively to determine the extent to which the judgement lien attached to property of the Estate. K&B answered this complaint with a counterclaim against the Debtor seeking a declaratory judment to determine that its judgement lien attached to property belonging to the Debtor which was not property of the Estate and therefore had priority over other creditors and further sought the turnover of property. Although this litigation remains pending post-petition the parties recognize that the resolution of many of the issues asserted in the adversary proceeding would likely be addressed in the appeal.

As noted above the debtor appealed the state court's decision in the Lawsuit to the Alabama Supreme Court. On September 28, 2018, the Alabama Supreme Court ruled that the method of damages used by the trial court was improper. Consequently, the Debtor was relieved of the obligation to pay K&B the sum of $531,000 as well as the profits earned from the sale of storm shelters. The case, however, has been remanded back to the Circuit Court for Morgan County to correctly calculate the amount of damages, if any, which the Debtor improperly earned from its fabrication of storm shelters. Additionally, the Alabama Supreme Court left open the possibility that the trial court could award damages that included the Debtors future profits from the fabrication of storm shelters. On December 6, 2018 the Bankruptcy Court granted relief from the automatic stay for the purpose of allowing the Parties to proceed with conducting discovery necessary to determine the amount of damages to which K&B may be entitled against the Debtor in the Lawsuit and to further allow the state trial court to conduct an evidentiary hearing regarding the amount of damages.

Also, at the request of K&B the Court determined that the Debtor was a "small business" for purposes of filing its plan and disclosure statement and is subject to the requirements of §§1121(e) and 1129(e) of the Bankruptcy Code. Pursuant to §1121(e) the Debtor must file its plan and disclosure statement within 300 days of the order for relief. Section 1129(e) further requires that the plan be confirmed within 45 days of its filing unless the time period is extended under Section 1121(e). However in order to extend the time period for confirmation the debtor must prove by a "preponderance of evidence" that it is more likely than not to have its plan confirmed within a reasonable period of time. 11 USC §1123(e)(3)(A). Furthermore the order extending the plan must be signed prior to the expiration of the existing deadline.

## ANALYSIS OF TRANSFERS WHICH MAY BE AVOIDABLE

Debtor's Statement of Financial Affairs, which has been previously filed with this Court shows no creditors to whom payments, greater than $6,225.00 were made within ninety (90) days prior to filing bankruptcy.

## EXECUTORY CONTRACTS AND LEASES

Debtor is a party to a lease agreement with Mitchell Properties for the lease of certain real

property located at 1301 Industrial Dr. Hartselle, Alabama. To the extent other leases or contracts exist they may be rejected upon confirmation. All parties to any executory contract or lease rejected shall have thirty (30) days from the Confirmation Date in which to file a claim for damages, if any, resulting from such rejection or such claims will be disallowed and will not be eligible to participate in distributions under this Plan.

## MEANS OF EXECUTION OF PLAN

Debtor will implement the terms of its proposed Plan by making payments to allowed claim holders from funds that the Debtor has on deposit and by making payments to Creditors with Allowed Claims from Debtor's post-petition income. Specifically, in the event that K&B votes to accept the treatment of its claim (Class 1.02) as proposed herein, then Debtor shall pay K&B's Class Claim 1.01 in full upon the Effective Date of the Plan from funds which the Debtor has in its DIP accounts. Thereafter, Debtor will pay settle and satisfy K&B's claim evidenced by Class 1.02 by making monthly payments in the amounts stated therein from its post-petition income.

In the event that K&B rejects the treatment of its Class claim 1.02 and proceeds to re-litigate the damages in the Lawsuit and in the event that K&B were to recover an amount in excess of $162,320 in damages against Debtor, then in such event, Debtor reserves the right to either amend the treatment of Class 1.02 to reamortize the debt or proceed with liquidation.

In this regard Debtor has previously solicited and received interest from at least one firm regarding the possible sale of its assets. The Debtor has recently re-engaged in discussions with T5 Equity Partners regarding the possible purchase of either the assets or stock of the Debtor. Previously, in July, 2018 prior to the Alabama Supreme Court issuing its ruling but subsequent to the Debtor incurring the fees for the appeal, the Debtor discussed the possible sale of the Debtor's assets but those discussions did not result in agreement in large part because of the pending appeal and the Debtor's belief that the was zero likelihood of being able to obtain a satisfactory offer.

In the event that the Debtor decides to proceed with liquidation, it reserves the right to sell its assets via private or public sale. The sale process would be two fold. First the Debtor would obtain an offer from an interested party. That party's offer would then set the "floor" of the offer for the assets of the Debtor. In order to obtain the highest price available for the assets to be sold, Debtor anticipates seeking the protections of a stalking horse bidder combined with a break up fee.

The Offer from the Stalking Horse would be subject to any higher bids. Without limiting the terms of a contract, each subsequent bidder must agree that (i) the purchase price shall be "all cash" payable at the closing and (ii) the bidder's obligation to close shall not be conditioned upon obtaining acquisition financing, the completion of any additional due diligence with respect to the assets to be sold or any other contingency, other than the approval by the Bankruptcy Court.

Debtor shall also execute such additional documents as are necessary to comply with the terms of the Plan.

## RETENTION, ENFORCEMENT, AND WAIVER OF CLAIMS

Pursuant to § 1123(b) of the Code, the Debtor shall retain and may enforce any and all claims of the Debtor, except claims waived, relinquished, or released in accordance with this plan.

Notwithstanding the prior paragraph, no party in interest except the Debtor shall maintain or commence an action to recover a preference as defined in § 547(b) of the Code after Confirmation

## FEDERAL INCOME TAX CONSEQUENCES

The tax consequences of the Plan to each party-in-interest will depend on the precise financial circumstances of that party. The Debtor makes no representation with respect to the effects of the taxation (State or Federal) on the creditors with respect to the treatment of their claims under the plan, and no such representations are authorized. Any tax information contained herein is for informational purposes only. Parties-in-interest are urged to seek the advice of their own professional advisors should they have any questions with respect to any taxation issues.

The precise tax consequences to the Debtor resulting from its having filed Chapter 11 are not yet known. This may include, for example, income from discharge of indebtedness. The treatment by the Debtor of all allowed pre-petition tax claims shall be as provided for in Class Two, described herein. All taxes generated post-petition shall be paid by the reorganized Debtor as part of its ordinary course of business. As previously noted, the Debtor is current on all post-petition tax payments.

## POST CONFIRMATION LITIGATION AND OTHER MATTERS

Debtor does not anticipate being involved in any post confirmation litigation matters.

Respectfully submitted on this 13th day of December, 2018.

                               By: */s/ Melanie Mitchell*  
                                 Aqua Marine Enterprises, Inc.

                                 */s/ Kevin D. Heard*  
                                 Kevin D. Heard  
                                 Attorney for Debtor

HEARD, ARY & DAURO, LLC
303 Williams Avenue SW
Park Plaza Suite 921
Huntsville, Alabama 35801
Phone: (256) 535-0817
Fax: (256) 535-0818
kheard@heardlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of December, 2018, I served a copy of the foregoing **Debtor's Disclosure Statement Dated December 13, 2018,** on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**

Richard Blythe
Richard_Blythe@alnba.uscourts.gov; courtmailann@alnba.uscourts.gov

Richard E. O'Neal on behalf of United States of America Department of Treasury - Internal Revenue Service  USAALN.BANKRUPTCY@usdoj.gov

**Notice will not be electronically mailed to:**

A**ll parties on the attached matrix were served via U.S. Mail.**

                                              */s/ Kevin D. Heard*
                                              Kevin D. Heard